IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FIRST INTERSTATE BANK, Trustee of the Declaration of Trust of Morton A. Ives Dated June 19, 1990,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL IVES, KURTIS KAMMERER, and CYNTHIA KAMMERER,<br><br>Defendants. | 8:25CV597<br><br>**MEMORANDUM AND ORDER REGARDING MOTIONS TO DISMISS PLAINTIFF'S FRAUD CLAIM** |

Plaintiff First Interstate Bank (FIB), as the successor Trustee of the Declaration of Trust of Morton A. Ives,[1] has brought this suit against Defendants Michael Ives, Cynthia Kammerer, and Kurtis Kammerer, who appear to be relatives of the last trust beneficiary, Sandy Ives. Filing 1 at 1 (unnumbered paragraph).[2] FIB alleges—at least primarily—that "[t]his is a fraud case that involves payments made pursuant to the terms and conditions of a trust" based on allegations that Defendants continued to take for their own use Trust payments made to Sandy Ives for more than eight years without notifying FIB that Sandy Ives had died. Filing 1 at 1–2 (¶ 1). The Complaint alleges claims of fraud by non-disclosure, unjust enrichment, money had and received, and conversion. The Kammerers jointly and Michael Ives separately have moved to dismiss only the fraud claim against them pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Filing 23; Filing 25. For the reasons stated below, the Motions to Dismiss the fraud claim are granted.

---

[1] More specifically, FIB alleges that it has brought this lawsuit "on its own behalf and as successor by merger with Great Western Bank, successor by merger with Farmers & Merchants Bank & Trust of Watertown, South Dakota," which was "Trustee of the Declaration of Trust of Morton A. Ives Trust dated June 19, 1990, as amended and reformed." Filing 1 at 1 (unnumbered paragraph).

[2] The precise relationship of Defendants to either Morton A. Ives or the last beneficiary is not expressly alleged in the Complaint.

1

## I.  INTRODUCTION

### A.  Factual Background

On Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court considers the allegations from the Complaint as true—to the extent that they are nonconclusory—for the purposes of ruling on the Motions. *See Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (citing *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). Thus, this statement of the factual background is drawn from the Complaint.

### 1.  The Trust

FIB alleges the following about the Trust from which its lawsuit springs:

10.     On June 19, 1990, Morton A. Ives created a trust for the benefit of Charles and Sandy Ives (the "Trust").

11.     The Trust provides in pertinent part as follows:

Upon the death of Morton A. Ives, the trustee shall "pay to my son, Charles Ives, the sum of SIXTY THOUSAND AND NO/100 ($60,000.00) Dollars per year during his lifetime, in monthly installments of FIVE THOUSAND AND NO/100 ($5,000.00); and upon his death, or if he has predeceased his wife Sandy Ives, the Trustee shall pay unto SANDY IVES the sum of THIRTY THOUSAND AND NO/100 ($30,000.00) Dollars per year in equal monthly installments of $2,500.00 each."

12.     The Trust further provides as follows:

"After the death of both Charles Ives and Sandy Ives, all of the assets of the Trust then remaining shall be forthwith paid over to the organization[s] named in subparagraph No. 9 hereof, in equal shares, and thereafter the Trust shall terminate."

13.     The organizations named in subparagraph 9 include the Boys Club of Omaha, Inc. n/k/a Boys & Girls Club of Omaha, Inc., the Jewish Federation of Omaha, Temple Israel, and the Jewish Home and Hospital for the Aged (collectively, the "Remainder Beneficiaries").

Filing 1 at 3–4 (¶¶ 10–13) (emphasis in the original). The Trust document is not attached to the Complaint or otherwise made a part of the record.

2

2.  *Charles Ives's Death and Subsequent Events*

Charles Ives predeceased his wife Sandy in 2008. Filing 1 at 4 (¶ 14). Pursuant to the terms of the Trust, the Trustee thereafter made monthly distributions in the amount of $2,500.00 to Sandy, together with the benefit of the payment of all taxes associated with such distributions. Filing 1 at 4 (¶ 15). Those distributions were deposited into a daily deposit account maintained at Wells Fargo Bank pursuant to an ACH Authorization. Filing 1 at 4 (¶ 16).

After Charles Ives's death, Sandy signed a series of Relationship Change Applications. *See* Filing 1 at 4–5 (¶¶ 17–20). First, she removed Charles Ives from the account on June 12, 2008. *See* Filing 1-2 at 2–3. She then added Michael Ives as a secondary joint owner on July 17, 2008. *See* Filing 1-3 at 2–4 (also signed by Michael Ives). Next, she removed Michael Ives from the account on June 3, 2010. *See* Filing 1–4 at 2–3 (also signed by Michael Ives). However, she then added Michael Ives back to the account and notified Wells Fargo of her change of address on May 14, 2015. *see* Filing 1-5 at 2–4 (also signed by Michael Ives).

Sandy passed away on or about September 21, 2015. Filing 1 at 5 (¶ 24). FIB alleges that her death terminated her entitlement to distributions from the Trust. Filing 1 at 5 (¶ 25). However, this allegation is a conclusion of law that the Court need not accept as true. *Dalen v. Harpstead,* 123 F.4th 900, 903–04 (8th Cir. 2024).

3.  *Trust Payments after Sandy's Death*

FIB alleges that Michael Ives, Cynthia Kammerer, and Kurtis Kammerer each failed to notify FIB of Sandy's death until at least 2024. Filing 1 at 5 (¶¶ 26–28). FIB alleges that it received no notification of Sandy's death and was not aware of her death until on or about March 1, 2024, but FIB does not allege how or when it learned of her death. Filing 1 at 5 (¶ 29). Indeed, after Sandy passed away, FIB continued to make monthly distributions to her account in the amount of $2,500.00 until February 2024—for more than eight years—for a total of $219,300.00 plus

3

payment of $34,850.00 in state and federal taxes associated with the distributions. Filing 1 at 6 (¶¶ 30–31).

FIB alleges that Michael Ives distributed $19,968.57 of the funds from the Trust to Kurtis Kammerer and distributed $41,600.00 of the funds from the Trust to Cynthia, which the Kammerers allegedly used for their own benefit. Filing 1 at 6 (¶¶ 33–35). Michael Ives allegedly received all the funds and used them—or at least the funds not distributed to the Kammerers—for his own benefit. Filing 1 at 6 (¶ 32). The Defendants receipt and use of the funds allegedly occurred notwithstanding that "upon information and belief" of FIB, each Defendant "was aware of the Trust and that Sandy was the last remaining lifetime beneficiary of the Trust entitled to receive periodic distributions therefrom." Filing 1 at 5 (¶¶ 21–23).

FIB alleges further,

> On or about August 13, 2024, the Bank entered into a settlement agreement with all Remainder Beneficiaries. Per the terms of the settlement agreement, the Bank paid $254,250.00 to the corpus of the Trust. Further, the Remainder Beneficiaries individually and collectively assigned to the Bank any and all claims that they may have against Defendants arising from distributions made to one or more Defendants.

Filing 1 at 6 (¶ 36).

### B.  Procedural Background

On June 16, 2025, FIB filed this lawsuit against Defendants in the United States District Court for the Western District of Texas, San Antonio Division. Filing 1. As mentioned above, the Complaint alleges claims of fraud by non-disclosure, unjust enrichment, money had and received, and conversion, but only the fraud claim is at issue on the Motions presently before the Court.

After incorporating by reference all prior allegations, the "Fraud by Non-Disclosure" claim alleges the following, in its entirety:

> 38.    Defendants deliberately failed to disclose material[ ] facts from [sic] the Bank (*i.e.*, that Sandy had died).

4

39.    Defendants had a duty to disclose the fact that Sandy had died to the Bank.

40.    Defendants' failure to remove Sandy from the account and their failure to notify the Bank of Sandy's death prevented the Bank from discovering that Sandy had died.

41.    The Bank was ignorant of the fact that Sandy had died and did not have an equal opportunity to discover the fact.

42.    Moreover, Plaintiff was never presented with a reason to investigate whether Sandy had died.

43.    The Bank exercised due diligence in attempting to discover that Sandy had died in that had Sandy been removed from said account upon her death, the Bank would have ceased ACH deposits into her account.

44.    Defendants intended for the Bank to continue acting as if Sandy was still alive. Namely, Defendants intended for the Bank to continue making payments from the Trust to Sandy as if she was still alive.

45.    The Bank relied on the non-disclosure by Defendants in continuing payments even after Sandy had died.

46.    As a direct and proximate result of said fraudulent concealment, the Bank and the Remainder Beneficiaries sustained damages in the amount of $254,250.00.

Filing 1 at 6–7 (¶¶ 38–46).

On September 29, 2025, after service on Defendants but prior to any responsive pleading or motion, FIB filed an Unopposed Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). Filing 9. FIB represented, "All of the parties agree that a transfer of venue to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1404(a) is appropriate as it would better serve the convenience of all parties and witnesses and would further the interests of justice." Filing 9 at 1 (¶ 4). On October 1, 2025, the District Court for the Western District of Texas transferred this case to this District. Filing 10 at 3.

5

The next procedural matter of significance here is that on November 17, 2025, the Kammerers jointly and Michael Ives separately filed the Motions to Dismiss only the fraud claim against them. Filing 23; Filing 25. Michael Ives's supporting brief states in most pertinent part,

> Defendant Michael Ives respectfully joins and adopts in full the arguments set forth in Defendants Kurtis Kammerer's and Cynthia Kammerer's (the "Kammerers") brief in support of their Motion to Dismiss (Doc. 24). To avoid unnecessary duplication, Defendant Ives incorporates those legal arguments as though fully stated herein, including all authorities cited and all grounds asserted for dismissal of Count 1 of Plaintiff's Complaint.

Filing 25 at 1. FIB filed a joint response to both Motions on December 15, 2025, Filing 29, and Defendants filed a single reply on December 22, 2025, Filing 30. The Motions are now fully submitted.

## II. LEGAL ANALYSIS

### A. Applicable Standards

The Kammerers' and Michael Ives move to dismiss only the fraud claim against them pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Filing 23; Filing 25. Therefore, the Court's analysis begins with a summary of the standards applicable to pleadings generally and to pleading fraud specifically.

#### 1. Rule 12(b)(6) Pleading Standards

Federal Rule of Civil Procedure 12(b)(6) provides for a pre-answer motion to dismiss for failure to state a claim upon which relief can be granted. The Eighth Circuit Court of Appeals recently explained,

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and

make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa,* 752 F.3d 725, 727 (8th Cir. 2014).

*Geivett v. AMC Mgmt., LLC*, 158 F.4th 900, 903 (8th Cir. 2025). Although courts must accept a complaint's allegations as true, courts "do not accept 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements,'" or legal conclusions unsupported by factual allegations. *Dalen v. Harpstead*, 123 F.4th 900, 903–04 (8th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 663).

The "elements of [a] prima facie case are [not] irrelevant to a plausibility determination" at the pleading stage. *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (cleaned up). Instead, "such elements are part of the background against which a plausibility determination should be made." *Id.* Specifically, the elements may be used as a "prism to shed light upon the plausibility of the claim." *Id.* (citation omitted). The claim at issue in this ruling is one for fraudulent non-disclosure. As the Nebraska Supreme Court has explained:

> To prove fraudulent concealment, a plaintiff must prove these elements: (1) The defendant had a duty to disclose a material fact; (2) the defendant, with knowledge of the material fact, concealed the fact; (3) the material fact was not within the plaintiff's reasonably diligent attention, observation, and judgment; (4) the defendant concealed the fact with the intention that the plaintiff act or refrain from acting in response to the concealment or suppression; (5) the plaintiff, reasonably relying on the fact or facts as the plaintiff believed them to be as a result of the concealment, acted or withheld action; and (6) the plaintiff was damaged by the plaintiff's action or inaction in response to the concealment.

*Sebade v. Sebade*, 28 N.W.3d 19, 49 (Neb. 2025).

2. *Rule 9(b) Pleading Standards for Fraud*

"Claims grounded in fraud must meet the heightened pleading requirement in [Federal Rule of Civil Procedure] 9(b)." *Collins v. Metro. Life Ins. Co.*, 117 F.4th 1010, 1017 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 1310 (2025). Rule 9(b) provides as follows:

> **(b) Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.

7

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). Thus, "[w]hen Rule 9(b) applies, the complaint must allege such matters as the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Collins*, 117 F.4th at 1017 (cleaned up) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)). "In other words, [Federal] Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1051 (8th Cir. 2024) (quoting *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011)).

When multiple defendants are alleged to have participated in the fraud, the claimant must "plead with particularity which defendant made what representation to the [claimant]," as well as "the nature of any Defendant's participation in a specific misrepresentation." *Christopherson v. Bushner*, 33 F.4th 495, 502–03 (8th Cir. 2022); *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (explaining that under Rule 9(b) "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint [must] inform each defendant of the nature of his alleged participation in the fraud—that is, specify the time, place, and content of each defendant's false representations, including when the acts occurred, [and] who engaged in them" (quotations omitted)). Furthermore, "[t]hough Rule 9(b) does not require alleging the 'specific details of every alleged fraudulent claim,' [the Eighth Circuit has] dismissed [a] claim because the claimant 'must provide some representative examples of [the] alleged fraudulent conduct, specifying the time, place, and content of [the] acts and the identity of the actors." *United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158, 1164 (8th Cir. 2019) (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006)).

8

**B. Application of the Pleading Standards**

Defendants' argument for dismissal of FIB's fraudulent non-disclosure claim has three prongs. First, Defendants argue that FIB impermissibly alleges essential elements only "upon information and belief." Filing 24 at 6. Second, they argue that the remainder of FIB's allegations lack the particularity required by Rule 9(b). Filing 24 at 7. Third, Defendants argue that FIB's Complaint fails to differentiate with particularity the actions of the individual Defendants. Filing 24 at 8. The Court will consider separately the prongs of Defendants' argument.

*1. Sufficiency of Pleadings on Information and Belief*

a. The Parties' Arguments

Defendants argue first that FIB's Complaint impermissibly alleges essential elements "upon information and belief." Filing 24 at 6. They acknowledge that matters of a defendant's knowledge can be pleaded generally under Rule 9(b), but they insist that there must be a statement of facts upon which the belief is founded. Filing 24 at 6. They argue that the "how" requirement for pleading fraud is entirely lacking here because no information is pleaded about the source of FIB's "information and belief" that Defendants knew that Sandy was the last remaining lifetime beneficiary entitled to receive periodic distributions or when and how Defendants acquired such knowledge. Filing 24 at 7.

FIB responds that it is entitled to plead knowledge "upon information and belief" when the facts are particularly within the possession and control of a defendant, as is the case here as to Defendants' knowledge that Sandy was the last remaining lifetime beneficiary and that she had died. Filing 29 at 3–4. FIB argues that it cannot plead with certainty what Defendants subjectively knew or understood in their own minds, nor is FIB required to do so under the Rules. Filing 29 at 4.

9

In reply, Defendants reiterate that allegations upon information and belief must be supported by a statement of facts on which the belief is founded. Filing 30 at 2. Defendants argue that this means that there must be some factual basis for the inference or a reasonable belief that the information supporting such liability is in the sole possession of the defendant. Filing 30 at 2. However, Defendants argue that FIB's Complaint indicates no basis upon which FIB formed this belief and no details about FIB's efforts to obtain such information. Filing 30 at 3. Thus, Defendants characterize FIB's fraud claim as a "fishing expedition" for unknown wrongs. Filing 30 at 3. Defendants argue further that there is nothing underlying FIB's assertions of fraud other than FIB's "wishful guesswork," so FIB resorts to blaming Defendants rather than taking responsibility for failing to meet its fiduciary duties. Filing 30 at 4.

b.   Pleading Fraud Based "upon Information and Belief"

Rule 9(b) states in part, "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Nevertheless, allegations based solely on information and belief are generally insufficient under Rule 9(b). *Hennessey v. Gap, Inc.*, 86 F.4th 823, 830 (8th Cir. 2023) (citing *Drobnak*, 561 F.3d at 783-84). There is an exception, however:

> "When the facts constituting the fraud are peculiarly within the opposing party's knowledge, however, such allegations may be pleaded on information and belief." [*Drobnak*, 561 F.3d] at 783-84. "If the plaintiff's allegations of fraud are ... based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 590 (8th Cir. 2018).

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020). The critical question is whether the plaintiff provides "enough information" about the basis for its belief for a defendant "to adequately respond and prepare a defense." *Id.* (quoting *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1146 (D. Minn. 2016)). The plaintiff does so if the plaintiff alleges particular facts that allow the court to draw the reasonable inference that the defendant knew the fact alleged.

*See id.* at 422 ("Ambassador did not allege any particular facts that the statements were false to 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)). In contrast, where plaintiff pleads "no facts . . . to support a broad allegation, and the plaintiff[ ] d[id] not identify the facts on which the belief is founded," the allegation upon information and belief is insufficient. *Id.* (quoting *Drobnak*, 561 F.3d at 784).

      c.   FIB's Allegations of Defendants' Knowledge of the Terms of the Trust Based Only upon Information and Belief Are Insufficient

In this case, FIB alleges the following about the Defendants' relevant knowledge as follows:

> 21.     Upon information and belief, Michael was aware of the terms of the Trust and that Sandy was the last remaining lifetime beneficiary of the Trust entitled to receive periodic distributions therefrom.

> 22.     Upon information and belief, Kurtis was aware of the terms of the Trust and that Sandy was the last remaining lifetime beneficiary of the Trust entitled to receive periodic distributions therefrom.

> 23.     Upon information and belief, Cynthia was aware of the terms of the Trust and that Sandy was the last remaining lifetime beneficiary of the Trust entitled to receive periodic distributions therefrom.

Filing 1 at 5 (¶¶ 21–23).

Defendants' knowledge or lack thereof of the terms of the Trust—and specifically that Sandy was the last beneficiary entitled to periodic distributions—is critical to at least three elements of FIB's fraudulent non-disclosure claims. Without such knowledge, there are no plausible inferences that any defendant had a duty to disclose the material fact of Sandy's death; concealed the fact of her death knowing it was material; and did so with the intention that FIB continue making periodic distributions to Sandy's account. *See Sebade*, 28 N.W.3d at 49 (first, second, and fourth elements of fraudulent non-disclosure under Nebraska law). However, FIB's

allegations of such knowledge "upon information and belief" are wholly conclusory, *see Dalen*, 123 F.4th at 903–04 (mere conclusory allegations do not satisfy Rule 12(b)(6)), and are insufficient under Rule 9(b)), *see Hennessey*, 86 F.4th at 830 (allegations based solely on information and belief are generally insufficient under Rule 9(b)).

FIB asserts that information about Defendants' knowledge of the terms of the Trust is peculiarly within Defendants' personal knowledge. However, that argument does not satisfy the exception allowing pleading based upon information and belief. "Upon information and belief" are not talismanic words that excuse a party from pleading a factually plausible basis for an allegation, even if it appears that the fact is peculiarly within the opposing party's knowledge. Rather, as the cases cited above make clear, for a pleading "upon information and belief" to be acceptable because the fact alleged is "peculiarly within the opposing party's knowledge," "the complaint must [also] set forth the source of the information and the reasons for the belief." *Ambassador Press*, 949 F.3d at 421 (quoting *Munro*, 899 F.3d at 590).

Here, FIB pleads "no facts . . . to support a broad allegation [that each Defendant knew the terms of the Trust], and [FIB] d[id] not identify the facts on which the belief [that they did] is founded"; thus, FIB's allegations of Defendants knowledge based upon information and belief are insufficient. *Id.* at 422 (quoting *Drobnak*, 561 F.3d at 784). FIB has not pointed to—and the Court has not found—any allegations in the Complaint of particular facts that would allow the Court reasonably to infer that Defendants knew the terms of the trust. *Id.* Thus, the Court must answer "no" to the critical question of whether FIB provided "enough information" about the basis for its belief that any Defendant knew the terms of the Trust for that Defendant "to adequately respond and prepare a defense." *See id.* at 421 (describing this as the "critical inquiry under Rule 9(b)" (quoting *Bobcat Co.*, 175 F. Supp. 3d at 1146)).

Consequently, Defendants' Motions to Dismiss the fraud claim are granted because FIB's claim relies on insufficient allegations based only "upon information and belief."

### 2. *Pleading with Particularity*

#### a. The Parties' Arguments

Next, Defendants argue that the remainder of FIB's allegations lack the particularity required by Rule 9(b). Filing 24 at 7. Defendants argue that the further allegations do not identify "the who, what, when, where, and how" of the circumstance constituting fraud throughout the Complaint. Filing 24 at 7. They argue that as to the alleged duty to disclose that Sandy had died, FIB fails to allege among other things when and how the duty arose. Filing 24 at 7. They argue further that FIB fails to allege how their failure to disclose Sandy's death prevented FIB, a Trustee with full fiduciary duties, from finding out for eight-and-a-half years that Sandy had died. Filing 24 at 8. As to their alleged intent for FIB to continue acting as if Sandy were alive and making payments from the Trust to Sandy, Defendants contend that there is no factual basis offered to support this element beyond conclusory allegations and disparagement of Defendants. Filing 24 at 8.

In response, FIB argues,

> The who, what, where, when, and how of the fraud claim are clear on the face of the pleading:
>
> - Who: Defendants Michael Ives, Kurtis Kammerer, and Cynthia Kammerer. [[Filing 1] at ¶¶ 26-28].
>
> - What (*i.e.*, the subject matter of the fraud): Trust funds sent by the trustee to the bank account of Sandy Ives. [*Id.* at ¶¶ 30-35].
>
> - Where: From the Sandy Ives bank account in Nebraska. [*Id.* at ¶¶ 16, 31].
>
> - When: From 2015 until 2024. [*Id.* at ¶¶ 24, 30-35].

- How: By removing funds regularly remitted by the Trust to the bank account of Sandy Ives without notifying the Trustee that she deceased. [*Id.* at 32-35].

Filing 29 at 45. Indeed, FIB argues that its Complaint "could not be clearer in detailing the 'who, what, where, when, and how' of the alleged fraud." Filing 29 at 5. FIB argues that Defendants' argument to the contrary conflates the "who, what, where, when, and how" of a fraud claim with Defendants' subjective intent, but the intent element involves information exclusively within Defendants' control. Filing 29 at 5. FIB argues that "Defendants attempt to create a pleading deficiency by focusing on increasingly granular, discrete portions of the story." Filing 29 at 6.

In reply, Defendants assert that FIB's allegation of the "how" of the fraud demonstrates the deficiency of its pleading, because FIB does not plausibly plead that the fact of Sandy's death was not within FIB's reasonably diligent attention, observation, or judgment. Filing 30 at 4. Defendants contend that without plausibly pleading such facts, FIB fails to plead that Defendants' withdrawal of funds remitted to Sandy's account without notifying FIB of her death was fraudulent. Filing 30 at 4.

   b. FIB's Conclusory Allegations Fall Short of Pleading Fraud with Particularity

The Court concludes that not only does FIB's pleading of its fraudulent non-disclosure claim lack the particularity required by Rule 9(b), *see UMB Bank, N.A.*, 89 F.4th at 1051, it is an example of a "threadbare recital[ ] of a cause of action's elements, supported by mere conclusory statements" unsupported by factual allegations that fails to satisfy Rule 12(b)(6), *see Dalen*, 123 F.4th at 903–04 (quoting *Iqbal*, 556 U.S. at 663). This becomes clear when the allegations in support of the fraudulent non-disclosure claim in the Complaint, Filing 1 at 5 (¶¶ 21–23), 6–7 (¶¶ 38–46), are compared to the elements of such a claim under Nebraska law set out in *Sebade*, 28 N.W.3d at 49. *See Blomker*, 831 F.3d at 1056 ("[S]uch elements [of a claim] are part of the

14

background against which a plausibility determination should be made," in that the elements may be used as a "prism to shed light upon the plausibility of the claim." (citation omitted)).

The first element of a fraudulent non-disclosure claim that a plaintiff must prove is that "[t]he defendant had a duty to disclose a material fact." *Sebade*, 28 N.W.3d at 49. FIB pleads exactly and only that Defendants had a duty to disclose that material fact: "Defendants had a duty to disclose the fact that Sandy had died to the Bank." Filing 1 at 7 (¶ 39). Nowhere does the Complaint allege facts plausibly suggesting when or how the alleged duty arose. *See UMB Bank*, 89 F.4th at 1051 (requiring the pleading of the "when" and "how" of the fraud).

The second element is that "the defendant, with knowledge of the material fact, concealed the fact." *Sebade*, 28 N.W.3d at 49. FIB pleads, "Defendants deliberately failed to disclose material[ ] facts from [sic] the Bank (*i.e.*, that Sandy had died)." Filing 1 at 6 (¶ 38); Filing 1 at 5 (¶¶ 26–28) (alleging that each Defendant failed to notify FIB of Sandy's death until at least 2024). It might be reasonable to infer that a failure to disclose a material fact suggests concealment if the person had a duty to disclose the fact. Yet, again, FIB pleads no facts plausibly suggesting that Defendants had a duty to make the disclosure (the "why" and "how" of the duty).

Next, FIB must prove that "the material fact was not within the plaintiff's reasonably diligent attention, observation, and judgment." *Sebade*, 28 N.W.3d at 49. FIB makes the wholly conclusory allegations that "Defendants' failure to remove Sandy from the account and their failure to notify the Bank of Sandy's death prevented the Bank from discovering that Sandy had died" and that FIB "was ignorant of the fact that Sandy had died and did not have an equal opportunity to discover the fact." Filing 1 at 7 (¶¶ 40–41). Nowhere does FIB plausibly allege facts supporting an inference that failure to remove Sandy from the account prevented FIB from learning of Sandy's death, why FIB was ignorant of the fact that Sandy had died, or why FIB did not have

an equal opportunity to discover the fact. *See UMB Bank*, 89 F.4th at 1051 (requiring the pleading

of the "how" and "why" of the fraud). The best that FIB can offer is the following allegations:

> 42.    Moreover, Plaintiff was never presented with a reason to investigate whether Sandy had died.

> 43.    The Bank exercised due diligence in attempting to discover that Sandy had died in that had Sandy been removed from said account upon her death, the Bank would have ceased ACH deposits into her account.

Filing 1 at 7 (¶¶ 42–43). An allegation that FIB exercised "reasonably diligent attention,

observation, and judgment" is simply not plausibly supported by factual allegations that FIB did

nothing and speculation that FIB would have done something if Defendants had done something.

"What" FIB did to show FIB's diligence—or "how" FIB acted diligently—is completely missing

from the allegation of this element; indeed, the allegation is that FIB did nothing, which is

antithetical to diligence. *See UMB Bank*, 89 F.4th at 1051 (requiring the pleading of the "what"

and "how" of the fraud).

FIB must also prove that "the defendant concealed the fact with the intention that the

plaintiff act or refrain from acting in response to the concealment or suppression." *Sebade*, 28

N.W.3d at 49 (fourth element). FIB alleges that "Defendants intended for the Bank to continue

acting as if Sandy was still alive. Namely, Defendants intended for the Bank to continue making

payments from the Trust to Sandy as if she was still alive." Filing 1 at 7 (¶ 44). Where there are

no plausible allegations to support Defendants' knowledge of the terms of the Trust—or as

explained above in § II.B.1. to show the source of the information and the reasons for FIB's belief"

that any Defendant knew the terms of the Trust, *see Ambassador Press*, 949 F.3d at 421—there

are no plausible allegations of Defendants' intent. Conclusory allegations of intent are no more

satisfactory than allegations "upon information and belief" when they are unsupported by plausible

allegations of any facts from which such intent can reasonably be inferred.

Finally, FIB must prove that "the plaintiff, reasonably relying on the fact or facts as the plaintiff believed them to be as a result of the concealment, acted or withheld action." *Sebade*, 28 N.W.3d at 49. FIB offers nothing but a threadbare statement of this element: "The Bank relied on the non-disclosure by Defendants in continuing payments even after Sandy had died"—albeit omitting the critical "reasonable" part of the reliance. Filing 1 at 7 (¶ 45). Again, no facts are alleged that plausibly suggest "why" or "how" it was reasonable for FIB to do nothing to learn the true facts and just blindly rely on the apparent status quo. *See UMB Bank*, 89 F.4th at 1051 (requiring the pleading of the "why" and "how" of the fraud).

FIB has failed to plead the fraud claim plausibly and with the particularity required by Federal Rules of Civil Procedure 12(b)(6) and 9(b). Defendants are entitled to dismissal of that claim.

### 3. Pleading the Actions of Individual Defendants

#### a. The Parties' Arguments

The third prong of Defendants' argument for dismissal of the fraudulent non-disclosure claim is that FIB's Complaint fails to differentiate with particularity the actions of the individual Defendants. Filing 24 at 8. In other words, Defendants argue that FIB fails to identify the specific acts of the Kammerers or Michael Ives individually. Filing 24 at 8. Thus, Defendants argue that the Complaint fails to inform each of them of the nature of his or her alleged participation in the fraud. Filing 24 at 8. Instead, Defendants argue that FIB simply use "Defendants" for all actions, so that who did what is not pleaded with particularity. Filing 24 at 8.

FIB responds that it has separately alleged that Michael Ives, Cynthia Kamerer, and Kurtis Kamerer each failed to notify the trustee of Sandy's death until at least 2024. Filing 29 at 7 (citing Filing 1 at 5 (¶¶ 26–28)). FIB argues that it also alleged separate amounts distributed to the

17

individual Defendants. Filing 29 at 7 (citing Filing 1 at 6 (¶¶ 31–33)). FIB argues that these allegations are sufficiently particular as to each Defendant. Filing 29 at 7–8.

                            **b. Allegations that Individual Defendants Failed to Notify FIB of Sandy's Death and What Amounts Each Defendants Received Do Not Make the Fraud Allegations Against Each Defendant Sufficient**

A plaintiff must not only plead "the who, what, when, where, and how: the first paragraph of any newspaper story" to plead fraud with particularity, *UMB Bank, N.A.*, 89 F.4th at 1051 (quoting *Crest Constr. II, Inc.*, 660 F.3d at 353), when multiple defendants are alleged to have participated in the fraud, the plaintiff must also "plead with particularity which defendant made what representation to the [claimant]," as well as "the nature of any Defendant's participation in a specific misrepresentation," *Christopherson*, 33 F.4th at 502–03. FIB has alleged—albeit in conclusory fashion—that each Defendant failed to notify FIB of Sandy's death until at least 2024. Filing 1 at 5 (¶¶ 26–28). The same could be alleged of the undersigned; indeed, the undersigned never notified FIB of Sandy's death. Thus, this allegation of each Defendants' non-disclosure standing alone does little by itself to make FIB's fraud claim plausible.

More importantly, an individual Defendant's failure to notify FIB of Sandy's death does not sustain a fraudulent non-disclosure claim against that individual Defendant where, as explained above, nowhere does the Complaint plausibly or with particularity allege how any individual Defendant had or was aware of a duty to make such a disclosure. As explained above in § II.B.1.c. and § II.B.2.b., FIB has not pointed to—and the Court has not found—any allegations in the Complaint of particular facts that would allow the Court reasonably to infer that any Defendant— let alone each of them—knew the terms of the trust or to allow the Court to reasonably infer when or how the duty to disclose arose. Likewise, the pleading of what each Defendant allegedly received by failing to disclose Sandy's death is not sufficient standing alone to prove a fraudulent

non-disclosure claim. *See Sebade*, 28 N.W.3d at 49 (stating the elements of a fraudulent non-disclosure claim under Nebraska law).

Thus, FIB has failed to plead the fraud by each individual Defendant with the plausibility and particularity required by Federal Rules of Civil Procedure 12(b)(6) and 9(b), and they are each entitled to dismissal of the fraud claim against them on this ground, as well.

### C. Dismissal With or Without Prejudice

#### 1. The Parties' Arguments

Because the Court is granting Defendants' Motions to Dismiss the fraud claim, the Court must take up Defendants' argument that if their Motions to Dismiss are granted, the deficiencies in the pleading of FIB's fraud claim cannot be cured by amendment, so dismissal should be with prejudice. Filing 24 at 9. Defendants argue that any attempt to amend the Complaint would be futile "because Plaintiff's allegation of fraud is nothing more than its own breaches of fiduciary duty dressed up as malfeasance by the defendants." Filing 24 at 9. Defendants argue further, "Plaintiff cannot plead facts that remove its fiduciary obligations with respect to prudent administration of the trust, proper record keeping, and protection of trust property, and, therefore, Plaintiff has not, and cannot, state a claim for fraud by non-disclosure." Filing 24 at 10. In contrast, FIB argues that any pleading deficiency can be cured by amendment and requests an opportunity to replead. Filing 29 at 8. FIB points out that it has not previously been granted an opportunity to replead, and Defendants have not shown that repleading would be futile. Filing 29 at 8. In reply, Defendants reiterate their contention that the deficiencies in the pleading of the fraud claim cannot be corrected by amendment because FIB cannot escape its fiduciary duties. Filing 30 at 5.

2.   *The Court Will Neither Grant Leave to Amend nor Dismiss with Prejudice*

a.   FIB Does Not Satisfy the Requirements for Leave to Amend

FIB ignores the requirements for leave to amend. In *Clobes v. 3M Co.*, 106 F.4th 803 (8th Cir. 2024), the Eighth Circuit concluded that "[t]he district court did not abuse its discretion in denying Clobes leave to amend on the basis that he failed to comply with the District of Minnesota's Local Rule 15.1(b). . . ." 106 F.4th at 809. The Eighth Circuit continued,

> We have long recognized that "[a] district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules." *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009). Here, Clobes sought leave to amend his complaint without submitting a proposed amended complaint to the district court. "Because we agree with the district court on th[is] point[ ], we need not reach its alternate holding that" amendment of Clobes's complaint would be futile. *Olmsted Citizens for a Better Cmty. v. United States*, 793 F.2d 201, 203 n.2 (8th Cir. 1986).

*Clobes*, 106 F.4th at 809. Thus, the decision in *Clobes* makes clear that if the movant fails to comply with the requirements of a local rule, that is sufficient ground to deny leave to amend, and that the district court need not consider any other ground. *Id.*[3]

The Court concludes that FIB's request for leave to amend in its Response to the Motions to Dismiss must be denied for failure to comply with the applicable local rule, NECivR 15.1(a). *See Clobes*, 106 F.4th at 809.

That local rule provides as follows:

15.1 Motion to Amend Pleading.

---

[3] The decision in *Clobes* is not an isolated ruling. *See, e.g., Axline v. 3M Co.*, 8 F.4th 667, 676 (8th Cir. 2021) ("A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules." (quoting *O'Neil*, 574 F.3d at 505)); *Nuevos Destinos, LLC v. Peck*, 999 F.3d 641, 646 n.4 (8th Cir. 2021) ("The district court did not abuse its discretion in denying Appellants leave to amend. Appellants failed to submit a proposed amended pleading with their motion, as required by the local rules." (citing *O'Neil*, 574 F.3d at 505)); *In re Baycol Prods. Litig.*, 732 F.3d 869, 880 n.8 (8th Cir. 2013) ("We conclude the district court did not abuse its discretion in denying the request, because Simpson failed to provide the district court with a copy of her proposed third amended complaint, as required by Local Rule 15.1 of the District of Minnesota." (citing *Drobnak v. Andersen Corp.*, 561 F.3d 778, 787 (8th Cir. 2009)).

(a) Form and Content.

A party who moves for leave to amend a pleading (including a request to add parties) must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments. Except as stated in these rules or court order, the proposed amended pleading must be a complete pleading that, if allowed to be filed, supersedes the original pleading in all respects; no part of the prior pleading may be incorporated into the proposed amended pleading by reference. The motion for leave to amend must (1) specifically state the proposed amendments and (2) state whether the motion is unopposed or opposed, after conferring with opposing parties.

NECivR 15.1(a). The rule thus states requirements for both the motion for leave to amend and the proposed amended pleading, which must be attached to the motion. *Id*. FIB has offered no proposed amended pleading. Indeed, rather than amending as a matter of course in the face of Defendants' Motions to Dismiss, FIB chose to stand on its original pleading of the fraud claim, and the Court accepts that strategic decision, at least at this point. *See, e.g.*, *Poemoceah v. Morton Cnty., N. Dakota*, 117 F.4th 1049, 1059 (8th Cir. 2024); *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 665 (8th Cir. 2012). Thus, FIB is not entitled to file an Amended Complaint attempting to cure the deficiencies identified by Defendants and the Court without satisfying the requirements of NECivR 15.1(a).

   b.   Defendants Are Not Entitled to Dismissal with Prejudice

On the other hand, the Court concludes that Defendants are not entitled to dismissal of the fraud claim with prejudice, although the Court has discretion to dismiss a complaint with prejudice and without leave to amend. *See*, *e.g.*, *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1367 (8th Cir. 2022). Notwithstanding FIB's failure to request leave to amend in the proper manner and the numerous deficiencies that the Court has identified in the pleading of the fraud claim, the Court does not agree with Defendants that amendment of FIB's fraud claim would necessarily be futile on the ground asserted by Defendants, and the Court will not assume that amendment would be futile. *But see Sorenson v. Sorenson*, 64 F.4th 969, 978 (8th Cir. 2023)

(stating that although the appellate court did "not agree that additional claims . . . would *necessarily* have been futile," the district court did not abuse its discretion by assuming that additional claims would be (emphasis in the original)). Whether or not FIB breached its fiduciary duty may be relevant to but is not necessarily dispositive of its fraud claim against Defendants, where that breach of fiduciary duty is as yet unproven. *Contra* Filing 24 at 9–10. FIB may yet be able to plead its fraud claim with sufficient plausibility and particularity if discovery that includes relevant issues proceeds.

Consequently, dismissal of the fraudulent non-disclosure claim is without prejudice.

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Motions to Dismiss the fraud claim, Filing 23; Filing 25, are granted with the exception that dismissal is without prejudice.

Dated this 26th day of March, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge